BENJAMIN B. WAGNER
United States Attorney
COLLEEN M. KENNEDY
Assistant U.S. Attorney
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2826
Facsimile:  (916) 554-2900
colleen.m.kennedy@usdoj.gov

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | CASE NO. |
|---|---|
| Plaintiff, | **COMPLAINT FOR DAMAGES AND FOR A DECLARATORY JUDGMENT** |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

### **INTRODUCTION**

1.     This is a complaint for damages arising out of a forest fire that ignited on April 29, 2007 in Kern County, California and spread to the Sequoia National Forest.  The fire burned approximately 1,350 acres of land, 1,320 of which were public National Forest System lands.  The fire, which became known as the James Fire, started when an electrical fault occurred along a residential power line owned by Defendant.  Defendant is liable for, among other things, negligently and in violation of law causing the James Fire to ignite by failing to properly maintain its power lines to ensure they were safe and free from dangerous conditions.

### **THE PARTIES**

2.     The United States, as sovereign, owns National Forest System lands, including the Sequoia National Forest, that are under the supervision, control, administration, and protection of the

1

US Complaint; Demand for Jury Trial

United States Department of Agriculture Forest Service ("Forest Service"), an agency of the United States.

3.  Defendant Southern California Edison Company ("SCE") was and is a public utility organized and existing under the laws of the State of California and subject to regulation by the California Public Utilities Commission. SCE owns, operates and maintains power lines throughout Southern California, including lines that traverse National Forest System lands.

## JURISDICTION AND VENUE

4.  This Court has original jurisdiction over this action under 28 U.S.C. § 1345.

5.  Venue is proper in the United States District Court for the Eastern District of California under 28 U.S.C. § 1391(b), because the events, acts or omissions giving rise to the United States' claims occurred in Kern County, California, which is within this district.

## GENERAL ALLEGATIONS

6.  On April 29, 2007, the James Fire ignited at approximately 2:50 p.m., behind the James Market in Kernville, California, on land closely adjacent to the boundary of the Sequoia National Forest. Investigators determined that the fire was caused by the malfunction of an SCE power line. Specifically, a loose connector attached to a neutral power line at the top of a power pole allowed an electrical current to be induced into the neutral line, causing arcing and pitting and resulting in molten material falling to the ground below. The molten material ignited ground fuels and started the James Fire.

7.  Strong gusty winds prevalent on the day the James Fire ignited caused the fire to spread quickly from its ignition point east onto the Sequoia National Forest and ultimately burned nearly 1,350 acres of land, virtually all of which were National Forest System lands. The Forest Service suppressed the James Fire at substantial cost to the United States.

8.  The SCE power lines and poles involved were part of an electrical distribution and transmission system, which includes but is not limited to hardware, fixtures, devices, poles, structures, components, power stations and substations, easements and rights of way, and which is owned, designed, constructed, installed, inspected, maintained, and/or controlled by SCE.

9. SCE had non-delegable statutory and regulatory duties to properly inspect and maintain its power lines to ensure that they were safe and did not present dangerous conditions.

10. At all times material to this action, SCE operated and maintained the power lines that caused the James Fire on National Forest System lands pursuant to a Special Use Permit from the Forest Service, a copy of which is attached as Exhibit 1 hereto.

11. The Special Use Permit and its terms and conditions were and are authorized by law, including 43 U.S.C. §§ 1761 and 1765, and 36 C.F.R. §§ 251.53 and 251.56.

12. SCE accepted all of the terms and conditions contained in the Special Use Permit. The Special Use Permit's initial term ended on December 31, 1992, but SCE has continued to pay the annual renewal fees for the permit billed by the Forest Service, including for the year 2007, and SCE remains bound by the permit's terms.

13. Under the Special Use Permit, SCE is strictly liable to the United States for all damages caused by its power lines up to $1,000,000 per occurrence, and is liable to the United States for any damages in excess of $1,000,000 caused by SCE's negligence. Paragraph 24 of the Special Use Permit states:

> The permittee shall be held liable for all injury, loss, or damage, including fire suppression costs, directly or indirectly resulting from or caused by the permittee's use and occupancy of the area covered by the permit, regardless of whether the permittee is negligent or otherwise at fault, provided that the maximum liability without fault shall not exceed $1,000,000 for any one occurrence . . . .
>
> Liability for injury, loss, or damage, including fire suppression costs, in excess of the specified maximum, shall be determined by the laws governing ordinary negligence.

14. The Special Use Permit also states that "[a]valanches, rising waters, high winds, falling limbs or trees and other hazards are natural phenomena in the Forest that present risks to the permittee's property which the permittee assumes" and that SCE bears the responsibility for inspecting its "site, lot, right-of-way and immediate adjoining area for dangerous trees, hanging limbs and other evidence of hazardous conditions" and removing such hazards.

15. The Special Use Permit further states, *inter alia*, that SCE "shall comply with the regulations of the Department of Agriculture and all Federal, State, county, and municipal laws,

ordinances or regulations which are applicable to the area or operations covered by this permit," and that SCE "shall maintain [its] power-transmission line or lines in such a manner as not to menace life or property."

16. At all times material to this action, the Special Use Permit constituted a valid and enforceable agreement between the United States and SCE.

17. Causing timber, trees, brush, or grass to burn except as authorized by permit is prohibited by law, including 36 C.F.R. § 261.5 and California Public Resources Code §§ 4421 and 4422. Ignition of the James Fire was not authorized by permit or otherwise by the United States.

18. The United States' damages caused by the James Fire include, but are not limited to: the costs of fire suppression; the current and future costs of mitigation, rehabilitation, and restoration of the burned areas; loss of and damage to timber, habitat, wildlife, watershed and earth protection; scenic and aesthetic values and views; environmental damages; loss of use and recreation; soil damage; and erosion. The amount of these damages will be proved at trial.

19. The United States has made a demand on SCE for payment of the costs and damages incurred by the United States to suppress the James Fire and undertake emergency rehabilitation efforts. SCE has not paid any part of the sum demanded by the United States.

## COUNT I

**(Strict Liability Under the Special Use Permit)**

20. The United States incorporates the above allegations as if fully set forth herein.

21. Pursuant to the Special Use Permit entered into between SCE and the United States allowing SCE to construct, operate, and maintain its power transmission lines on the Sequoia National Forest, SCE is held strictly liable "for all injury, loss, or damage, including fire suppression costs," up to $1,000,000, "directly or indirectly resulting from or caused by [SCE]'s use and occupancy of the area covered by the permit, regardless of whether [SCE] is negligent or otherwise at fault."

22. The James Fire resulted directly or indirectly from and was caused by SCE's use and occupancy of the area covered by the Special Use Permit, including the power lines and equipment within and adjacent to the Sequoia National Forest.

23. Under the terms of the Special Use Permit, SCE is liable to the United States for the United States' damages resulting from the James Fire up to $1,000,000.

## COUNT II

### (Breach of the Special Use Permit)

24. The United States incorporates the above allegations as if fully set forth herein.

25. 36 C.F.R. § 261.10 prohibits the violation of any term or condition of a special-use authorization, contract, or approved operating plan.

26. SCE breached its obligations to the United States under the Special Use Permit in connection with the James Fire, including but not limited to the following:

27. SCE failed to do everything reasonably within its power to prevent damage to the land and property of the United States, failed to take reasonable precautions to prevent and suppress fires, and failed to maintain the equipment and power lines it owned, operated, and maintained and the area it used and occupied pursuant to the permit to appropriate standards of repair and safety with which it was legally and/or statutorily obligated to comply;

28. SCE failed to properly inspect its equipment, including but not limited to the loose connector that caused the James Fire;

29. SCE failed to comply with all Federal, State and other laws, ordinances or regulations, including duties under the Health and Safety Code and otherwise applicable to SCE as a public utility; and

30. SCE failed to comply with its contractual duty to pay all damages to the United States up to $1,000,000 directly or indirectly resulting from or caused by SCE's use and occupancy of the area covered by the permit.

31. As a result of these breaches by SCE, the United States incurred damages in an amount to be established at trial.

## COUNT III

### (Violation of Cal. Health & Safety Code §§ 13007 Through 13009.1)

32. The United States incorporates the above allegations as if fully set forth herein.

33. SCE, personally or through another, negligently and in violation of law ignited the James Fire, or allowed it to be ignited, and allowed it to spread to National Forest System lands.

34. The laws SCE violated in igniting the James Fire or allowing it to be ignited include, but are not limited to: 36 C.F.R. §§ 261.5, 261.9; 18 U.S.C. § 1856; Cal. Health & Safety Code § 13001; and Cal. Pub. Res. Code §§ 4421, 4422.

35. As a proximate result of SCE's negligence and violation of laws in igniting the James Fire or allowing it to be ignited, the United States has suffered substantial damage, including, but not limited to, costs of fire suppression, lost commercial timber, costs of reforestation, damage to habitat, soil, and watersheds, and loss of irreplaceable environmental resources, in an amount to be proven at trial.

36. SCE is liable for such damages pursuant to Cal. Health & Safety Code §§ 13007 through 13009.1.

## COUNT IV

### (Negligence)

37. The United States incorporates the above allegations as if fully set forth herein.

38. SCE was negligent in causing and failing to prevent the James Fire.

39. At all times relevant to this action, SCE had a duty to maintain its equipment and power lines, and the area which it used and occupied pursuant to the Special Use Permit, in accordance with applicable law, and in a safe manner and so as to prevent damage to the land and property of the United States. SCE had a duty to exercise reasonable care in operating and maintaining its power transmission lines and associated equipment.

40. SCE breached these duties by, among other things: igniting the James Fire or allowing it to ignite; failing to properly maintain its power transmission lines and associated equipment; failure to take reasonable precautions to detect problems with such lines and equipment; failing to construct, operate, and maintain such lines and equipment in a safe and effective working order; failing to prevent damage to the land and property of the United States; failing to take reasonable precautions to prevent and suppress fires; failing to ensure the proper and safe maintenance, operation, use, and occupancy of lands on and adjacent to National Forest System

lands pursuant to the afore-mentioned Special Use Permit; and failing to implement appropriate training, policies, and procedures to ensure such proper and safe maintenance, operation, use and occupancy.

41. The energized power lines that ignited the James Fire are a "device which may kindle a fire" within the meaning of California Public Resources Code § 4435.

42. Pursuant to California Public Resources Code § 4435, the ignition of the James Fire is *prima facie* evidence of SCE's negligence in the maintenance, operation, or use of the power lines.

43. SCE further violated multiple statutes and regulations, creating a presumption of negligence under California Evidence Code § 669(a), including, but not limited to:  36 C.F.R. §§ 261.5 (c) through (e), 261.9(a); 18 U.S.C. § 1856; Cal. Health & Safety Code § 13001; and Cal. Pub. Res. Code §§ 4421, 4422.

44. The United States is further entitled to a presumption and inference of negligence under the doctrine of *res ipsa loquitur*, because (1) the ignition and spread of the James Fire was an incident of the kind that ordinarily does not occur in the absence of someone's negligence, (2) the James Fire was caused by an agency or instrumentality within the exclusive control of SCE, and (3) the United States did not cause or contribute to the ignition of the James Fire.

45. SCE's negligent acts, omissions, and violations of law caused the James Fire to ignite and were the proximate cause of substantial harm to the United States.

46. As a proximate result of SCE's negligence and violation of laws in causing the James Fire or allowing it to be ignited, the United States has suffered substantial damage, including, but not limited to, costs of fire suppression, lost commercial timber, costs of reforestation, damage to habitat, soil, and watersheds, and loss of irreplaceable environmental resources, in an amount to be proven at trial.

47. SCE is responsible for all costs and damages caused by its negligence and the negligence of its agents and employees, under common law and California Civil Code §§ 1714 and 3333.

## COUNT V

### (Trespass by Fire)

48. The United States restates the above allegations as if fully set forth herein.

49. SCE negligently and/or in violation of law ignited or allowed to be ignited the James Fire and allowed it to spread to National Forest System lands within the Sequoia National Forest.

50. This encroachment and invasion by fire onto the United States' property was done without the United States' consent.

51. As a proximate result of this trespass, the United States has suffered substantial damage, including, but not limited to, costs of fire suppression, lost timber, costs of reforestation, damage to habitat, soil, and watersheds, and loss of irreplaceable environmental resources, in an amount to be proven at trial.

52. The United States seeks to double damages under California Civil Code § 3346 for this trespass by fire.

## COUNT VI

### (For A Declaratory Judgment That Cal. Health & Safety Code § 13009.2 Is Inapplicable)

53. The United States restates the above allegations as if fully set forth herein.

54. To compensate the public for the full extent of the harm caused by SCE's negligent and unlawful ignition of the James Fire, the United States seeks full compensation for all of its damages, including, but not limited to, the costs of fire suppression, the current and future costs of mitigation, rehabilitation, and restoration of the burned areas, loss of and damage to timber, soil, habitat, wildlife, watershed, scenic and aesthetic values and views, and loss of irreplaceable environmental resources.

55. Under federal law, the United States is entitled to recover for all of its separate and identifiable injuries, including intangible environmental harms, and its recovery is not constrained by the "fair market value" of protected public forest lands.

56. The United States is also entitled to a mandatory enhancement of damages for wrongful injuries to timber, trees, or underwood under California Civil Code § 3346.

57. On September 11, 2012, the California State Legislature enacted California Health & Safety Code § 13009.2, which applies only to "public agencies," including the United States, and attempts to limit the public's recovery for injuries sustained by forest fires by, *inter alia*: (1) forbidding the United States from seeking damage enhancements if it seeks any type of environmental damage; (2) requiring that any damages the United States recovers must not be "unreasonable in relation to the fair market value of the property," and that in assessing environmental damages, "fair market value of the property is relevant and one factor to be considered"; and (3) limiting ecological environmental damages to those that are "quantifiable."

58. Section 13009.2 is in violation of the Supremacy Clause of the United States Constitution because it discriminates against the United States and purports to regulate the United States.

59. Section 13009.2 is also inapplicable to this case because it frustrates and is hostile to a federal policy of authorizing the United States as sovereign to seek full compensation for damage to public forest lands.

60. The issue of whether California Health & Safety Code § 13009.2 will apply to determine the proper measure of damages for which SCE is liable for its wrongful burning of National Forest System lands presents an actual case and controversy regarding the rights of the parties to this action.

61. Pursuant to 28 U.S.C. § 2201, the Court should declare the rights of the parties concerning whether California Health & Safety Code § 13009.2 will apply in this case.

## COUNT VII

**(Interest and Penalties)**

62. The United States restates the above allegations as if fully set forth herein.

63. The United States is entitled to recover interest and penalties under federal and state law, including without limitation under California Civil Code §§ 3287 and 3288, the Debt Collection Act, 31 U.S.C. § 3717, and federal common law.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays for judgment in its favor awarding the United States:

1. Damages fully and fairly compensating the United States for all damages sustained from the James Fire, including the costs of fire suppression, the costs of rehabilitation and restoration of the burned areas, loss of commercial timber, and loss of environmental resources and uses;

2. Double damages under California Civil Code § 3346;

3. A declaration that California Health & Safety Code § 13009.2 violates the Supremacy Clause of the United States Constitution, frustrates and is hostile to federal policy, and will not apply to determine the measure of damages in this case;

4. Interest, including interest as authorized under 31 U.S.C. § 3717 and California Civil Code §§ 3287, 3288;

5. Investigation, collection, accounting, and administrative costs incurred as a result of the James Fire;

6. Attorneys' fees and costs; and

7. Such other and further relief this Court deems appropriate.

Dated:  April 26, 2013                    Respectfully submitted,

                                          BENJAMIN B. WAGNER
                                          United States Attorney

                                    By:      /s/   *Colleen M. Kennedy*
                                          COLLEEN M. KENNEDY
                                          Assistant U.S. Attorney

**DEMAND FOR JURY TRIAL**

The United States hereby demands a jury trial for all issues so triable in this action.

Dated:  April 26, 2013                    Respectfully submitted,

                                          BENJAMIN B. WAGNER
                                          United States Attorney

                                    By:      /s/   *Colleen M. Kennedy*
                                          COLLEEN M. KENNEDY
                                          Assistant U.S. Attorney

# EXHIBIT 1

| U.S. DEPARTMENT OF AGRICULTURE FOREST SERVICE | a. Record No. (1-2) | b. Region (3-4) | c. Forest (5-6) |
|---|---|---|---|
| | 7 0 | 05 | 13 |
| **SPECIAL USE PERMIT** Act of Oct. 21, 1976 (PL 94-579) FOR ELECTRIC TRANSMISSION LINE ~~XXXXXXXXXXXXXX~~ This permit is revocable and nontransferable | d. District (7-8) 52, 53  54, 56 | e. User Number (9-12) 4 1 1 9 — 0 | f. Kind of use (13-15) 8 1 2 |
| | g. State (16-17) 0 6 | h. County (18-20) 0 2 9  1 0 7 | k. Card no. (21) 1 |

Southern California Edison Co. of 100 Long Beach Ave., Long Beach, CA 908
  (Name)

(hereafter called the permittee) is hereby authorized to use National Forest lands, for the construction,

operation and maintenance of a  2.4 - 12  KV transmission lineS/within the _____
                                  (Capacity)

_____Sequoia_____ National Forest, subject to the general provisions

and to the special provisions and requirements, items  23  to  36  on page(s)  2

to  4  attached hereto and made a part of this permit. The location of this use is shown on

the map(s) which is (are) a part of this permit, and is (are) identified as follows:
  Distribution Facilities - SNF (Tulare County, 164-2160 thru 348-2058 and

  Kern County, 708-1818 thru 832-1866)

Length in:  $\frac{68.39}{\text{(Miles) or}}$  x  Width  $\frac{20}{\text{(Feet)}}$ = $\frac{165.78}{\text{(Acres)}}$  $\frac{65.8 \text{ mi. (Charge)}}{2.59 \text{ mi. (Free)}}$ = 68.39 Total
            (Feet)

Construction or occupancy under this permit shall begin within  ----  and construction shall be
                                                                 (Months)

completed within  ----  months.
                  (Number)

For this use, the permittee shall pay to the Forest Service, U.S. Department of Agriculture, the sum
of  One thousand three hundred and twenty  Dollars ($ $1320.00 )

from  January 1  19 83 , to  December 31  19 83 , and thereafter,

annually on  or before January 1st, $20/mile or fraction thereof  ,

                                              Dollars ($  20/mile  ):

provided, however, charges for this use may be made or readjusted whenever necessary to place the
charges on a basis commensurate with the value of the use authorized by this permit.

This permit is accepted subject to all of its terms and conditions:

| | PERMITTEE'S NAME & SIGNATURE | | DATE |
|---|---|---|---|
| ACCEPTED | C. J. Lowerison, Manager, Right of Way and Land Southern California Edison Co. | | MAY 1 0 1983 |
| | ISSUING OFFICER'S NAME & SIGNATURE | TITLE | DATE |
| APPROVED | /s/ JAMES A. CRATES | FOREST SUPERVISOR | 5-23-83 |

2700-11 (5/72)

Expires 12/31/1992

## GENERAL PROVISIONS

1. Development plans; layout plans; construction, reconstruction, or alteration of improvements; or revision of layout or construction plans for this area must be approved in advance and in writing by the Forest Supervisor.

2. No timber shall be cut or destroyed during construction of the transmission line without first obtaining permission from the Forest Service. The permittee shall clear only the minimum area required for safe transmission line use. All timber cut, destroyed or injured shall be paid for at current stumpage rates applicable to the sale by the Forest Service of similar timber in the National Forest.

3. The permittee shall keep the area beneath the transmission line cleared and shall trim all branches in contact or near contact with the line. All trees, live or dead, deemed by the permittee to be hazardous or which might fall in contact with the line, whether on or adjacent to the right-of-way, shall be removed by the permittee: Provided, however, that permission to do so must first be obtained from the Forest Service.

4. All waste material from constructing or maintaining the line shall be burned or otherwise disposed of as directed by the Forest Service. However, no material shall be disposed of by burning during any closed season established by law or regulation without a written permit from the Forest Service.

5. The permittee shall protect the scenic and esthetic values of the right-of-way and the adjacent land as far as possible consistent with the authorized use, during the construction, operation, and maintenance of the facility.

6. The permittee shall be responsible for prevention and control of soil erosion and gullying on Government lands covered by this permit and lands adjacent thereto resulting from construction or maintenance of the transmission line; and shall vegetate with grass or herbaceous plants all ground where the soil has been exposed; and shall construct and maintain such preventive works to accomplish this result as prescribed in the erosion control plan attached, and made a part of this permit.

7. The permittee shall place and maintain suitable structures and devices to reduce to a reasonable degree the possibility of contact between its powerline and telegraph, telephone, signal or other powerlines heretofore constructed and not owned by the permittee, and shall also place and maintain suitable structures and devices to reduce to a reasonable degree the possibility of any structures or wires falling and obstructing traffic or endangering life on highways or roads. The transmission line shall be designed and constructed in accordance with accepted standards (National Electrical Safety Code) and specifications for transmission lines of similar voltage, capacity, and purpose.

8. The permittee shall make provision, or bear the reasonable cost of making provision for avoiding inductive or conductive interference between any transmission facility or other works constructed, operated, or maintained by it and authorized under the permit, and any radio installation, telephone line, or other communication facilities existing when the permit is authorized or any such installation, line or facility thereafter constructed or operated by the United States or any agency thereof. This provision shall not relieve the permittee from any responsibility or requirement which may be imposed by other lawful authority for avoiding or eliminating inductive or conductive interference.

9. The permittee shall protect all Government and other telephone, telegraph, and power-transmission lines at crossings of and at all places in proximity to the permittee's power-transmission line or lines; and shall maintain said power-transmission line or lines in such a manner as not to menace life or property.

10. The permittee shall maintain the improvements and premises to standards of repair, orderliness, neatness, sanitation, and safety acceptable to the Forest Service.

11. The permittee, in exercising the privileges granted by this permit, shall comply with the regulations of the Department of Agriculture and all Federal, State, county, and municipal laws, ordinances, or regulations which are applicable to the area or operations covered by this permit.

12. [text struck through and illegible]

13. [text struck through and illegible]

14. The temporary use and occupancy of the premises and improvements herein described may be sublet by the permittee to third parties only with the prior written approval of the Forest Supervisor, but the permittee shall continue to be responsible for compliance with all conditions of this permit by persons to whom such premises may be sublet.

15. This permit is subject to all valid claims.

16. No Member of or Delegate to Congress or Resident Commissioner shall be admitted to any share or part of this agreement or to any benefit that may arise herefrom unless it is made with a corporation for its general benefit.

17. Upon abandonment, termination, revocation, or cancellation of this permit, the permittee shall remove within a reasonable time all structures and improvements except those owned by the United States, and shall restore the site, unless otherwise agreed upon in writing or in this permit. If the permittee fails to remove all such structures or improvements within a reasonable period, they shall become the property of the United States, but that will not relieve the permittee of liability for the cost of their removal and restoration of the site.

18. This permit is not transferable. If the permittee through voluntary sale or transfer, or through enforcement of contract, foreclosure, tax sale, or other valid legal proceeding shall cease to be the owner of the physical improvements other than those owned by the United States situated on the land described in this permit and is unable to furnish adequate proof of ability to redeem or otherwise re-establish title to said improvements, this permit shall be subject to cancellation. But if the person to whom title to said improvements shall have been transferred in either manner above provided is qualified as a permittee and is willing that his future occupancy of the premises shall be subject to such new conditions and stipulations as existing or prospective circumstances may warrant, his continued occupancy of the premises may be authorized by permit to him if, in the opinion of the issuing officer or his successor, issuance of a permit is desirable and in the public interest.

19. This permit may be terminated upon breach of any of the conditions herein by the issuing officer or at the discretion of the Regional Forester or the Chief, Forest Service; provided, the permittee shall have had a reasonable time—not to exceed ninety (90) days—within which to show cause why such termination should not be made.

20. This permit confers no rights upon the permittee to use this National Forest land for purposes other than constructing, maintaining, and operating a transmission line thereon.

21. The permittee shall allow officers and employees of the United States free and unrestricted access in, through, and across the said project and project works in the performance of their official duties and shall allow the Forest Service, without charge, to construct or permit to be constructed in, through, and across the said project, railroads, chutes, roads, trails, conduits, and other means of transportation not inconsistent with the enjoyment of said project by the grantee for the purpose herein set forth.

22. In the event of any conflict between any of the preceding printed clauses or any provision thereof and any of the following clauses or any provisions thereof, the following clauses will control.

23. A late payment charge in addition to the regular fees shall be made for failure to meet the fee payment due date or any of the dates specified for submission of statements required for fee calculation. The late payment charge shall be $15, or an amount calculated by applying the current rate prescribed by Treasury Fiscal Requirements Manual Bulletins to the overdue amount for each 30-day period or fraction thereof that the payment is overdue, whichever is greater. If the due date falls on a nonworkday, the late payment charge will not apply until the end of the next workday.

24. The permittee shall be held liable for all injury, loss, or damage, including fire suppression costs, directly or indirectly resulting from or caused by the permittee's use and occupancy of the area covered by the permit, regardless of whether the permittee is negligent or otherwise at fault, provided that the maximum liability without fault shall not exceed $1,000,000 for any one occurrence and provided further that the permittee shall not be liable when such injury, loss, or damage results wholly, or in part, from a negligent act of the United States, or an act of a third party not involving the facilities of the permittee.

    Liability for injury, loss, or damage, including fire suppression costs, in excess of the specified maximum, shall be determined by the laws governing ordinary negligence.

25. The permittee shall indemnify the United States against any liability for damage to life or property arising from the occupancy or use of National Forest lands under this permit.

26. Avalanches, rising waters, high winds, falling limbs or trees and other hazards are natural phenomena in the Forest that present risks to the permittee's property which the permittee assumes. The permittee has the responsibility of inspecting his site, lot, right-of-way and immediate adjoining area for dangerous trees, hanging limbs and other evidence of hazardous conditions and, after securing permission from the Forest Service, of removing such hazards.

27. Unless sooner terminated or revoked by the Forest Service in accordance with the provisions of the permit, this permit shall, subject to annual revalidation by the Forest Service and payment of fees by the permittee, expire and become void on December 31, 1992, but a new permit to occupy and use the same National Forest land may be granted provided the permittee will comply with the then existing laws and regulations governing the occupancy and use of National Forest lands and shall have notified the Forest Supervisor not less than 1 year prior to said date that such new permit is desired.

28. Any lands described in this permit which have been withdrawn for waterpower purposes under the act of March 3, 1879, or act of June 25, 1910 (or are embraced in an application or license under the Federal Power Act of June 10, 1920), or have been withdrawn under the Reclamation Act of June 17, 1902, are subject at any time to use in connection with the development of waterpower or for reclamation purposes. This permit, therefore, is issued with the specific understanding that (1) its use shall not interfere with such waterpower or reclamation development and that (2) the permit may be, if necessary, terminated upon ninety (90) days notice when in the judgment

RECEIVED

CLAIMS MANAGEMENT

of the Federal Energy Regulatory Commission, or of the Bureau of Reclamation in the event of reclamation withdrawals, the lands occupied are needed for use in connection with the generation of hydroelectric power, reclamation developments, or other purposes contemplated by the act or acts under which the lands have been withdrawn. No claim shall be made against the United States or power licensees for or on account of prospective profits or for any injury or damage to properties, improvements, or operations due to such development. The permittee will be allowed ninety (90) days in whch to remove his improvements.

29. This permit is granted with the express understanding that should future location of Government improvements or road rights-of-way require the relocation of the permittee's improvements, such relocation will be done by the permittee at his expense within sixty (60) days following request to relocate.

30. Pesticides may not be used to control undesirable woody and herbaceous vegetation, aquatic plants, insects, rodents, trash fish, etc., without prior written approval of the Forest Service. A request for approval of planned uses of pesticides will be submitted annually by the permittee on the due date established by the Forest Supervisro. The report will cover a 12 month period of planned use beginning 3 months after the reporting date. Information essential for review will be provided in the form specified. Exceptions to this schedule may be allowed only when unexpected outbreaks of pests require control measures which were not anticipated at the time the annual report was submitted, at which time an emergency request and approval may be made.

   Only those materials registered by the U.S. Environmental Protection Agency for the specific purpose planned will be considered for use on National Forest Systems lands. Label instructions will be strictly followed in the application of pesticides and disposal of excess materials and containers.

31. Extensions as necessary may be made currently to the line authorized by this permit under the following conditions: (1) that the extensions are located within the boundaries of the distribution area which will be known as the Sequoia National Forest Distribution Area; (2) that before November 10 of each year, the permittee will report to the Forest Service the actual mileage constructed to date and submit a map conforming to the requirements of the map forming a part of the application for original permit and showing any changes in location made during the year; (3) that the construction of any such expansion shall not be started until specifically approved in writing by the District Ranger and until conflicts in rights-of-way with other special uses have been settled; and (4) that power or lighting service to any cabin, house, or other structure on National Forest land will not be started until the wiring of such structure or structures has been approved by the Forest Service.

32. The permittee agrees that no substantial change or alteration shall be made in the design, location, construction, voltage, or capacity of this line until application for such change shall have been submitted to and approved by the Forest officer issuing this permit, his successor, or his authorized representative.

RECEIVED

CLAIMS MANAGEMENT

33. This permit shall not be exclusive. The Forest Service reserves the right to use or permit others to use any part of the permitted area for any purpose, provided such use does not interfere with the rights and privileges hereby authorized.

34. No waste or byproducts shall be discharged if it contains any substances in concentrations which will result in substantial harm to fish and wildlife, or to human water supplies.

    Storage facilities for materials capable of causing water pollution, if accidentally discharged, shall be located so as to prevent any spillage into waters, or channels leading into water, that would result in substantial harm to fish and wildlife or to human water supplies.

35. All National Forest timber cut or destroyed in the construction of the permitted improvements shall be paid for at current stumpage rates for similar timber in the National Forest. Young-growth timber below merchantable size will be paid for at current damage-appraisal value; and all slash and debris resulting from the cutting or destruction of such timber shall be disposed of as necessary or as the Forest Service may direct.

36. The underground transmission line shall be designed and constructed in accordance with accepted State standards (General Order #128 - Rules for Construction of Underground Electric Supply and Communication Systems, State of California, Public Utilities Commission) and specifications for transmission lines of similar voltage, capacity, and purpose. The permittee shall place and maintain suitable structures and devices to reduce to a reasonable degree the likelihood of contact between its powerline and telegraph, telephone, signal, or other powerlines heretofore constructed and not owned by the permittee, and shall also place and maintain such lines and devices underground, unless clearly shown to be impractical, in a manner satisfactory to the Forest Service.

RECEIVED

MAY 6

CLAIMS MANAGEMENT

| United States Department of Agriculture Forest Service | a. Record no. (1-2) | b. Region (3-4) | c. Forest (5-6) |
|---|---|---|---|
| Act of Oct. 21, 1976 (PL 94-579) AMENDMENT #1 FOR SPECIAL USE PERMIT Ref: FSM 2714 | 70 | 05 | 13 |
| | d. District (7-8) | e. User number (9-12) | f. Kind of use (13-15) |
| | 52, 53, 54, 56 | 4119-01 | 643 |
| THIS AMENDMENT IS ATTACHED TO AND MADE A PART OF THE ☐ TERM  ☒ ANNUAL PERMIT | g. State (16-17) | h. County (18-20) | k. Card no. (21) |
| | 06 | 029, 107 | 1 |

For __Powerlines__ _____ issued to _____
(KIND OF PERMIT)

__Southern California Edison Company__ REC'D on __5/23/83__
(NAME OF PERMITTEE)                        (DATE OF PERMIT)

which is hereby amended as follows:

MAY 04 2010
CLAIMS MANAGEMENT

Replace the fee clause on the face sheet of the permit with the following:

> The holder shall pay annually in advance a sum determined by the Forest Service to be the fair market value of the use granted by this authorization. The payment for 1988 is set at $3,007.00 for the calendar year. This is the first year of a three year phase-in period. Subsequent payments shall be determined by the use of an annual fee schedule. The Forest Service may adjust the amount of payment annually by an appropriate factor to reflect more nearly the fair market value of the use, but at certain intervals the Forest Service shall review the fee and adjust the fee as necessary to assure that it is commensurate with the value of the rights and privileges authorized as determined by appraisal or other sound business management principles. Failure of the holder to make the annual payment, late payment charge, and any other charges when due shall cause this authorization to terminate.

Delete Clause 23 and replace with the following:

> Pursuant to the Federal Claims Collection Act of 1966, as amended, 31 USC 3717, _et seq._, and regulations at 4 CFR 102.13, an interest charge shall be assessed on any payment not made by the payment due date. Interest shall be assessed using the most current rate prescribed by the United States Department of Treasury Fiscal Requirements Manual (TFRM-6-8020.20). Interest shall accrue from the date the payment was due. In addition, the cost of processing and handling the overdue payment shall be added to the amount due.

This Amendment is accepted subject to the conditions set forth herein, and to conditions __XXXXXXXXXXXXX XXXXXXXXXXXXXXXXX__ attached hereto and made a part of this Amendment.

| PERMITTEE | NAME OF PERMITTEE | SIGNATURE OF AUTHORIZED OFFICER | DATE |
|---|---|---|---|
| | So. Calif. Edison Co. | TITLE Supv. of Proj. Licsng. & Plng. | 1/13/88 |
| ISSUING OFFICER | NAME AND SIGNATURE JAMES A. CRATES | TITLE Forest Supervisor | 1/19/88 |

Expires 12/31/1992                2700-23 (3/72)

A penalty of 6 percent per year shall be assessed on any payment overdue in excess of 90 days from the payment due date.

Payments will be credited on the date received by the designated collection officer or deposit location. If the payment due date(s) falls on a nonworkday, the interest and penalty charges shall not apply until the close of business of the next workday.

RECEIVED

MAY 0 4 2010

CLAIMS MANAGEMENT